DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

THE HONORABLE LEON A. KENDALL,    )
                                    )
          Plaintiff,      )
                                    )
          v.              )    Civil No. 2010-109
                                    )
SUPERIOR COURT OF THE VIRGIN ISLANDS, )
GOVERNMENT OF THE VIRGIN ISLANDS,  )
and THE HONORABLE DARRYL D. DONOHUE, )
SR., in his official capacity,     )
                                    )
          Defendants.     )
_____)

ATTORNEYS:

**Suzanne M. Elovecky, Esq.**
Todd & Weld LLP
Boston, MA
**Darren John-Baptiste**
The Practice, PLLC
St. Thomas, VI
    *For the plaintiff.*

**Aquannette Y. Chinnery, AAG**
Virgin Islands Department of Justice
St. Thomas, VI
    *For the defendant the Government of the Virgin Islands.*

**Paul L. Gimenez, AGC**
Superior Court of the Virgin Islands, General Counsel's Office
St. Thomas, VI
**Pamela L. Colon, Esq.**
Law Offices of Pamela L. Colon
St. Croix, VI
    *For the defendants the Superior court of the Virgin Islands*
    *and the Honorable Darryl D. Donohoe, Sr.*

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 2

## AMENDED MEMORANDUM OPINION[1]

**GÓMEZ, C.J.**

In October of 2009, the Honorable Leon A. Kendall ("Kendall") retired after more than twenty-five years of service with the Superior Court of the Virgin Islands (the "Superior Court"), first in the General Counsel's Office, and subsequently as a member of that estimable bench. When he retired, he requested the payment of certain retirement benefits. Some of these requests were denied. Thereafter, he initiated the instant action against the defendants, the Superior Court, the Government of the Virgin Islands (the "Government"), and the Presiding Judge of the Superior Court, the Honorable Darryl D. Donohue, Sr. ("Donohue").

Kendall's amended complaint (the "Amended Complaint") asserts four counts. In Count One, he alleges that the contract he entered into with the Superior Court was impaired when he was denied lump-sum compensation for his unused sick leave, in violation of the Impairment of Contracts Clause contained in Section 3 of the Revised Organic Act of 1954, codified at 48

---

[1] The Court inadvertently issued a Memorandum Opinion (ECF No. 234) on February 28, 2013, which states that the basis for a $65,000 cap on the salary used for annuity calculation was unclear. That version of the Memorandum Opinion, through inadvertent oversight, did not include a reference to Title 3, Section 702(n), which clearly states that the maximum salary for annuity calculation purposes cannot exceed $65,000. This Amended Memorandum Opinion corrects that oversight. In any event, the Judgment entered along with that Memorandum Opinion on February 28, 2013, is unaffected by the amendments herein.

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 3

U.S.C. § 1561 (the "Revised Organic Act"). In Count Two, he

alleges that the contract he entered into with the Superior

Court was impaired when the portion of his salary upon

retirement in excess of $65,000 was not factored into

calculating his retirement annuity. In Count Three, he alleges

that the contract he entered into with the Superior Court was

impaired when he was denied lump-sum compensation for all of his

unused annual leave. In Count Four, he alleges that the contract

he entered into with the Superior Court was impaired when he was

denied lump-sum compensation for his unused compensatory time.

At a hearing on November 8, 2012, the Court orally granted

summary judgment in favor of the defendants and against Kendall

on Count Four of the Amended Complaint, and accordingly

dismissed that Count.

On December 3, 2012, a bench trial was held on the

remaining counts. What follows are the Court's findings of fact

and conclusions of law.

## I.   FINDINGS OF FACT

1.   At all relevant times, the Virgin Islands Government

Employees Retirement System ("GERS") provided retirement

benefits for employees of the Virgin Islands Government. *See*

V.I. CODE ANN. tit 3, § 703(b) ("Any person who becomes an

employee on or after [September 30, 1959,] shall become a member

[of GERS] as a condition of employment . . . .") ("Section

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 4

703"). Members of the GERS are entitled to receive a retirement annuity, the amount of which is determined by their years of service and their average salary. In order to receive credit for their years of service, members must make regular contributions to the GERS from their salary. V.I. CODE ANN. tit. 3, § 704.

2.   On September 22, 1983, Leon A. Kendall ("Kendall") was offered a position as Assistant General Counsel to the then-Territorial Court (now the Superior Court) of the Virgin Islands. The offer was memorialized in a letter which stated that the position would have "a beginning salary of approximately $30,000 per annum." (Pl.'s Ex. 17.)

3.   On November 29, 1983, Kendall signed a document (the "1983 Appointment Letter") which read, in pertinent part:

> You are hereby appointed ASSISTANT GENERAL COUNSEL in the Territorial Court of the Virgin Islands, Government of the Virgin Islands, Judiciary, with pay at the rate of $30,000 per annum ($1,176.92 bi-weekly) effective November 28, 1983 through November 30, 1984.

(Pl.'s Ex. 19.) Kendall signed the 1983 Appointment Letter below the words "I hereby accept this appointment on the terms indicated above." (Pl.'s Ex. 19.)

4.   At the time Judge Kendall began his employment with the then-Territorial Court, Title 3, Section 731(a) of the Virgin Islands Code ("Section 731(a)") provided that "All sick leave in excess of 90 days shall be paid in lump sum as

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 5

compensation to the employee at his rate of pay whether his separation from the service was mandatory, voluntary or involuntary." V.I. CODE ANN. tit. 3, § 731(a) (1981).

5.   Also at that time, Title 3, Section 706 of the Virgin Islands Code ("Section 706") provided: "Upon retirement from service, a member shall receive a service retirement annuity, payable semi-monthly, computed at the rate of 2.5% of average compensation times the number of years of credited service, not to exceed 40 years." V.I. CODE ANN. tit 3, § 706(a) (1981). Thus, the maximum possible annuity would be one hundred percent of a retiree's average salary.

6.   At the time Kendall began his employment, the maximum amount of compensation to be used in the computation of any annuity was $30,000. V.I. CODE ANN. tit. 3, § 702(n) (1981).

7.   On November 23, 1984, Judge Kendall signed another appointment letter (the "1984 Appointment Letter"). The 1984 Appointment Letter read, in pertinent part:

> Your appointment as ASSISTANT GENERAL COUNSEL in the Territorial Court of the Virgin Islands, Government of the Virgin Islands, Judiciary, is hereby extended for an additional year commencing December 1, 1984 through December 31, 1985 with pay at the rate of $37,300 per annum ($1,434.61 bi-weekly).

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 6

(Pl.'s Ex. 20.) Kendall signed the 1984 Appointment Letter,
again under the words "I hereby accept this appointment on the
terms indicated above." (Pl.'s Ex. 20.)

    8.   On January 31, 1986, the Virgin Islands Legislature
(the "Legislature") passed Act Number 5135 ("Act 5135"), which
amended Section 731(a). Act 5135 provided that employees of the
Government of the Virgin Islands would receive only a credit to
their retirement annuity for any unused sick leave, rather than
a lump-sum payment. V.I. CODE ANN. tit. 3, § 731(a) (1986).

    9.   On March 21, 1986, Kendall signed another appointment
letter, dated November 19, 1985 (the "1985 Appointment Letter").
The 1985 Appointment letter provided that Kendall's appointment
as Assistant General Counsel was to be "extended for an
additional year commencing January 1, 1986 through January 2,
1987 . . . ." (Pl.'s Ex. 21.) In all other respects, the 1985
Appointment Letter is identical to the 1984 appointment letter.

    10.   In 1987, Judge Kendall was promoted to the position of
General Counsel. On January 14, 1987, he signed an appointment
letter (the "1987 Appointment Letter") which read, in pertinent
part,

>             Upon   satisfactory   completion   of   your
> appointment as ASSISTANT GENERAL COUNSEL,
> you are hereby promoted to GENERAL COUNSEL
> in   the   Territorial   Court   of   the   Virgin
> Islands,   Government   of   the   Virgin   Islands,
> Judiciary,   with   pay   at   the   rate   of   $40,900
> per   annum   ($1,573.07   bi-weekly)   effective

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 7

> January 3, 1987, subject to Territorial
> Court rules.

(Pl.'s Ex. 22.) In all other respects, the 1987 Appointment Letter is identical to the 1985 Appointment Letter.

11. Notwithstanding Section 703, which ordinarily makes a Government employee a member of the GERS upon the commencement of their employment, Kendall did not begin making contributions from his salary into the GERS until June 30, 1988. (Trial Tr. 52:2-9, Testimony of Kendall.)[2]

12. In July of 1989, Kendall began making additional contributions to the GERS for those years of service for which he had not previously paid contributions. (Jt. Final Pretrial Mem., Admission h.)

13. In 1990, the Legislature passed Act Number 5222, which provided that a retiree's annuity would be reduced "by .325% for each month or fraction thereof that the member's age is less than sixty (60) years." V.I. CODE ANN. tit. 3, § 705 (1990).

14. In 1991, the Legislature passed Act Number 5763 ("Act 5763"), which added the following provision to Section 706: "Notwithstanding any other law, no member shall receive a service retirement annuity in an amount that exceeds $65,000 per annum exclusive of any cost of living annuity." V.I. CODE ANN. tit. 3, § 706(d) (1991).

---

[2] Neither Kendall nor the defendants have offered any explanation for this more than four-year lag.

Case: 3:10-cv-00109-CVG-RM   Document #: 236   Filed: 03/01/13   Page 8 of 52
*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 8

15.  During his time as General Counsel, Kendall received annual increases in his salary until October 1, 2000. On that date, Kendall's salary was increased to $90,000. (Pl.'s Ex. 45.) Thereafter, Kendall's salary remained at $90,000 until he left his position as General Counsel on October 1, 2003. (Pl.'s Exs. 42; 45)

16.  On October 3, 2003, Judge Kendall was appointed an Associate Judge in the then-Territorial Court of the Virgin Islands. (Trial Tr. 54:4-15, Testimony of Kendall.)

17.  On May 24, 2004, Kendall applied for retirement benefits for his service in the General Counsel's Office from November 23, 1983, through October 2, 2003. (Pl.'s Ex. 41.)

18.  On October 20, 2004, Kendall began receiving the requested retirement annuity payments. (Trial Tr. 54:4-15.) These payments were based on an annuity calculated to be $29,859.37. This annuity was payable in semi-monthly installments of $1,251.64. (Pl.'s Ex. 42.)

19.  The amount of the annuity was calculated by multiplying the years of Kendall's credited service in the General Counsel's office--twenty--by his average salary over the prior three years. During that time, Kendall's salary was $90,000. (Pl.'s Ex. 45.)

20.  At the time Kendall retired, the maximum compensation to be used in calculating an employee's retirement annuity was $65,000. V.I. Code Ann. tit. 3, § 702(n) (2009).

21.  The GERS calculated Kendall's annuity by first capping his General Counsel's salary, at $65,000. The GERS then multiplied $65,000 by Kendall's total years of credited service--twenty. The GERS multiplied the resulting product by 2.5%. This yielded a total annuity of $32,500. This was then reduced by $2,640.63 to reflect the period of time for which Kendall had not made contributions into the GERS. Thus, GERS concluded that Kendall's total annuity was $29,859.37. (Pl.'s Ex. 42.)

22.  On October 3, 2009, Kendall retired from the Superior Court. (Trial Tr. 62:6-15.)

23.  Over the course of his tenure with the Superior Court, Judge Kendall claims he accumulated annual leave, sick leave, and compensatory time--leave granted in exchange for overtime pay--which he did not use. At the time of his retirement, he requested lump-sum compensation for all of this unused leave. (Trial Tr. 62:14-63:2, Testimony of Kendall.)

24.  The Virgin Islands Department of Finance completed an audit of Kendall's accrued leave, and found that Kendall had accrued 2,237.5 hours of sick leave, and 640 hours of annual leave. The audit also found that Kendall had accrued 584 hours

of "excess annual leave."[3] Nothing in the audit reflects any
accumulation of unused compensatory time. (Pl.'s Ex. 7.)

25.  Kendall was not paid a lump sum for his unused sick
leave. Instead, his unused sick leave was counted as additional
credited service in the calculation of his retirement annuity.
(Pl.'s Ex. 42.)

26.  Kendall was paid $50,863.68 for the 640 hours of
unused annual leave he had accumulated. (Tr. of Trial 62:14–
63:2)

27.  Kendall was not paid for the 584 hours of excess
annual leave he accumulated. (Trial Tr. 62:14–63:2.)

28.  Kendall was not paid for the unused compensatory time
he allegedly accumulated. (Trial Tr. 62:14–63:2.)

## II.  CONCLUSIONS OF LAW

### A.  Government as a Defendant

The Government moves to dismiss on the ground that it is
not properly a party to this action. Specifically, the
Government somewhat peculiarly claims that it does not litigate
on behalf of the entire Government, but only the executive
branch. Therefore, the Government argues, as Kendall was an

---

[3] The defendants assert that Kendall's accumulated "excess annual leave"
represents those hours of unused leave from years prior to the year of his
retirement in excess of sixty days, which is the maximum amount of leave
allowed to accumulate for successive years, or "rollover," under Title 3,
Section 581(a) of the Virgin Islands Code.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 11

employee of the Superior Court, and not the executive branch,

the Government as a whole cannot have any liability to Kendall.

The tortured reasoning of the Government is unavailing for

several reasons. First, Section 2(b) of the Revised Organic Act

of 1954, codified at 48 U.S.C. § 1561, provides that "The

government of the Virgin Islands . . . shall have the right to

sue by such name and in cases arising out of contract, to be

sued . . . ." Rev. Org. Act of 1954, § 2(b); *see also Creque v.*

*Roebuck*, 16 V.I. 197, 205–06 (Terr. Ct. 1979) ("This court is

unwilling to read Section 2(b) as applying only to contracts

entered into by the executive branch and not the legislative or

judicial branches. This is particularly so in the absence of any

allegation or evidence that funds for the contracts were not

appropriated by the Legislature and approved by the governor

[*sic*].") More specifically, the obligation to pay retirement

annuities and benefits is borne by the entire Government, not

the individual branches. *See* V.I. CODE ANN. tit. 3, § 720 ("[T]he

payment of the required contributions by the employer and all

annuities and benefits granted under the provisions of this

chapter are hereby made obligations of the employer . . . ."); 

V.I. CODE ANN. tit. 3, § 702(c) (defining "employer" as used in

this portion of the Code as "the Government of the United States

Virgin Islands . . . .").

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 12

Indeed, it would be absurd if Kendall were limited to suing the Superior Court, as it would be tantamount to suing himself. The Superior Court "consist[s] of not less than six (6) judges . . . ." V.I. CODE ANN. TIT. 4, § 71. The Superior Court is not an entity that exists separate and apart from the members of the judiciary which comprise it. Treating it as such would lead to the illogical result that Kendall may have had a contract with the Superior Court of which he was a part. The Court would be forced to conclude that Kendall therefore had a contract with himself and is now suing himself for failing to uphold his end of the bargain that he made with himself.

The Court further notes that this is not the first time judges have brought suit for unpaid or otherwise due compensation, and in each such prior instance, the judges have sued the Government as a whole, not as separate branches. In *Marsh v. Government of the Virgin Islands*, 431 F. Supp. 800 (D.V.I. 1977), a judge of the then-Territorial Court brought suit seeking recalculation of a retirement benefit. The judge sued the Government of the Virgin Islands, not the territorial court. Similarly, in *Joseph v. Government of the Virgin Islands*, 576 F. Supp. 1335 (D.V.I. 1983), a group of judges brought suit claiming a pension right had been unconstitutionally impaired. Again, the judges sued the entire Government of the Virgin Islands.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 13

The Government attempts to distinguish these cases on the ground that, in each, the Executive Branch had taken some action--failing to properly calculate a benefit, and failing to set up a pension fund, respectively--that gave rise to liability. To the extent such a formality is required, it is surely present in the instant case, as the Legislature enacted, and the Governor signed, several of the laws at issue here. Moreover, to the extent that Kendall claims his current benefits have been miscalculated, such miscalculation was allegedly made by an agency of the Executive Branch.

More generally, in *United States v. Beer*, 696 F.3d 1174, (Fed. Cir. 2012) (*en banc*), several current and former federal judges sued, complaining that they had been wrongfully denied cost-of-living adjustments in compensation during their tenure. The only governmental actor in that case was the United States Congress, which had failed to approve the cost-of-living adjustments. *See id.* at 1177-79. There was no allegation that the federal judiciary or the federal executive branch had acted or failed to act in any significant way. Nonetheless, the plaintiffs in that case named as a defendant simply the "United States." *Id.* at 1174.

In the alternative, the Government argues that it is not represented in this proceeding, because only the Virgin Islands Attorney General has appeared, which is tasked with representing

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 14

the Executive Branch. *See* V.I. CODE ANN. tit. 3, § 114(a) ("The

Attorney General shall have the following powers and

duties . . . (1) to appear for and represent the executive

branch . . . (3) to prosecute in the name of the People of the

Virgin Islands, offenses against the laws of the Virgin

Islands.") ("Section 114(a)"). To begin, this argument is self-

undermining, as it appears on the face of Section 114(a) that

the Attorney General is tasked with representing the "People of

the Virgin Islands" in criminal cases. Thus it is certainly

contemplated that the Attorney General can and will represent

more than the executive branch.

Moreover, it is ultimately irrelevant who has been charged

with the duty of representing the Government for the purposes of

the instant suit. Kendall named the Government as a defendant.

Kendall effected service on the Government by serving the

Governor of the Virgin Islands, in compliance with Federal Rule

of Civil Procedure 4(j)(2).[4] Precisely who appears to represent

the Government to answer Kendall's complaint does not change the

fact that the Government has been validly brought into this

case. Whether or not the Attorney General's Office is the

---

[4] To the extent that the Government appears to argue that by serving the
Governor, Kendall failed to effect service on the whole Government, that
argument is without merit. The Government has not timely filed any objection
to the service of process in this case. Moreover, The fact that service may
be accomplished as against the whole Government by serving only one person or
office is irrelevant to the question of whether the Government has been
properly served, as it indisputably has been here.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 15

appropriate entity for such representation is a matter for the Government to resolve.

There can be but one Government of the Virgin Islands. It is comprised of three separate and coequal branches--the Executive, Legislative, and Judiciary. Much like the branches of a tree, neither of these branches can truly exist without the other. To contend otherwise leads to the absurd result that the Virgin Islands, unlike the United States, or any state therein, or indeed any country, province, or territory of which this Court is aware, is governed by three governments. The complexities and paradoxes of such a bizarre arrangement is difficult to fathom. Yet, this view--one in which it is impossible to sue a sovereign entity as a whole; one in which every component branch, agency, and perhaps even each and every person which compose a Government must be sued individually and separately--is urged on this Court today. The Court declines to adopt such a view. Accordingly, the Government's motions to dismiss will be denied.

**B.    Statute of Limitations**

Before proceeding to the merits of the case, the Court must first address Donohue and the Superior Court's argument that Kendall's claims are time-barred.

When sitting in federal question jurisdiction, if the relevant federal law provides no statute of limitations, the

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 16

district court must adopt the limitations period from the analogous state law that would be applied if the claim were pursued in state court. *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974). The district court must do what a local court would do "had a claim seeking similar relief been brought under state law." *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 197 (3d Cir. 1984). Thus, for example, in Section 1983 cases, the Court of Appeals has applied the state-law statute of limitations for tort actions. *See id.*

The Virgin Islands has no statute of limitations for constitutional claims. However, were Kendall to seek similar relief without raising his constitutional claim, the most analogous cause of action would be breach of contract. In the Virgin Islands, the statutory period within which a breach-of-contract action may be brought is six years. V.I. Code Ann. tit. 5, § 31(3)(A).

Donohue and the Superior Court argue that with respect to the claim asserted in Count One, the statute of limitations began to run in 1986 when Act 5135 was passed. Similarly, they argue that the statute of limitations for the claim asserted in Count Two began to run in 1991 when Act 5763 became law. Alternatively, they argue that the statute of limitations began to run on all of Kendall's claims when he began receiving a

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 17

retirement annuity for his service in the General Counsel's office in 2004.

"Normally, under Virgin Islands law, the 'statute of limitations begins to run upon the occurrence of the essential facts which constitute the cause of action.' " *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 562 (D.V.I. 2004) (citing *Simmons v. Ocean*, 544 F. Supp. 841, 843 (D.V.I. 1982)). Here, it cannot be said that merely upon the passage of Acts 5135 and 5763 those essential facts had occurred. Kendall did not receive any adverse determination regarding his unused sick leave or his annuity until he made requests to the GERS for payment of his various retirement benefits. Bringing an action merely on the passage of Acts 5135 and 5763, without any indication of whether or how they might be enforced, would certainly have been premature.

Donohue and the Superior Court's next argument, that the statute of limitations began to run in 2004, is also problematic. To begin, Kendall only requested annuity payments for his service in the General Counsel's Office pursuant to Title 3, Section 733 of the Virgin Islands Code ("Section 733"). Section 733 permits members of the judiciary to "receiv[e], while serving in the Judiciary, an annuity for non judicial [*sic*] service." V.I. CODE ANN. tit. 3, § 733. Kendall did not request--nor is it clear that Section 733 would permit--

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 18

compensation for his unused sick leave, annual leave, and
compensatory time. Kendall was not denied compensation for those
three categories of leave until his retirement from the bench in
2009. Thus, the claims asserted in Counts One, Three, and Four
were made within the statutory period.

Kendall admits, however, that he began receiving annuity
payments on October 20, 2004. These payments were calculated
with the $65,000 cap imposed by Act 5736. This action was
initiated on October 20, 2004, which was a day more than six
years after Kendall began receiving his annuity payments.

The fact that Kendall knew, or should have known, of the
impairment of his alleged contractual obligation more than six
years prior to the initiation of this action is not dispositive,
however. It is well-established that "[a] breach of a
"continuing [contract]" gives rise to a cause of action each day
the breach continues. Consequently, the statute of limitations
begins to run anew as each breach occurs." *Christmas v. Virgin
Islands Water & Power Auth.*, 571 F. Supp. 843, 848 (D.V.I.
1981). The statute of limitations only begins to run when there
is "an outright repudiation" of the contract. *See Henglein v.
Colt Indus. Operating Corp.*, 260 F.3d 201, 214 (3d Cir. 2001).
In determining whether a contract is a continuing one, courts
look to whether there was a "fixed time for termination," a

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 19

"fixed duration," or a "definite time fixed for payment." *See*

*Raab v. Lander*, 427 F. App'x 182, 185 (3d Cir. 2011).

Here, the alleged contract is in essence an installment

plan. With each payment, claims Kendall, the Government was

breaching its obligation to pay him what he owed. This was not a

contract with a fixed termination date or a fixed duration, but

rather one which obliged the Government to pay Kendall over a

potentially long period of time. Accordingly, the Court finds

that Kendall has alleged the existence of a continuing contract.

Accordingly, to the extent that the claim asserted in Count

Two seeks relief for any alleged violations occurring after

October 20, 2004, it falls within the limitations period. To the

extent Kendall seeks relief for any violations occurring on or

before that date, however, they are dismissed as time-barred.

### C.  Merits

Kendall alleges that the Defendants' failure to pay him

lump-sum compensation for his unused sick leave, annual leave,

and compensatory time violated the Impairment of Contracts

Clause of Section 3 of the Revised Organic Act of 1954. Kendall

further alleges that Act 5763 impaired his employment contract,

in violation of the Contract Clause of the Revised Organic Act,

by imposing a cap on his annuity.

The Federal Constitution provides, "No State

shall . . . pass any . . . Law impairing the Obligation of

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 20

Contracts . . . ." U.S. CONST. Art. I, § 10, cl. 1. The Revised

Organic Act incorporates the federal Contracts Clause, providing

that: "No law impairing the obligation of contracts shall be

enacted." Rev. Org. Act of 1954 § 3, cl. 6., (codified at 48

U.S.C. § 1561); *WICO, Ltd. v. Gov't of the V.I.*, 844 F.2d 1007,

1009 (3d Cir. 1988) ("[T]he contract clause of the United States

Constituion[ is] incorporated into Virgin Islands law by § 3 of

the Revised Organic Act . . . .").

    "Contracts enable individuals to order their . . . affairs

according to their particular needs and interests. Once

arranged, those rights are binding under the law, and the

parties are entitled to rely on them." *Allied Structural Steel

Co. v. Spannaus*, 438 U.S. 234, 243 (1978). "The purpose of the

Contract Clause is to protect the legitimate expectations that

arise from such contractual relationships from unreasonable

legislative interference." *Transp. Workers Union*, 145 F.3d at

622.

    "A party seeking to prevail on a Contracts Clause claim

'must demonstrate that a change in state law has "operated as a

substantial impairment of a contractual relationship." ' "

*Schimes v. Barrett*, 427 F. App'x 138, 142 (3d Cir. 2011)

(quoting *Transp. Workers Union, Local 290 ex rel. Fabio v.

SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998) (quoting *GM Corp. v.

Romein*, 503 U.S. 181, 186 (1992))). To determine whether a party

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 21

has met that burden, the Court must make "three threshold
inquiries: (1) whether there is a contractual relationship; (2)
whether a change in a law has impaired that contractual
relationship; and (3) whether the impairment is substantial."
*Transp. Workers Union*, 145 F.3d at 621 (citing *GM Corp.*, 503
U.S. at 186).

If the Court determines that "a substantial impairment of a
contractual relationship has occurred," the Court must then
"further inquire whether the law at issue has a legitimate and
important public purpose and whether the adjustment of the
rights of the parties to the contractual relationship was
reasonable and appropriate in light of that purpose." *Id.*
(citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234,
242-44 (1978); *Nieves v. Hess Oil V.I. Corp.*, 819 F.2d 1237,
1243 (3d Cir. 1987)). Ordinarily, where the impaired contract is
between private parties, "the court will defer to the
legislative judgment concerning the importance of the public
purpose and the manner in which that purpose is being pursued."
*Id.* (citing *Energy Reserves Grp., Inc. v. Kan. Power & Light
Co.*, 459 U.S. 400, 412-13 (1983)). However, where, as here, the
state is a party to the contract, "complete deference to a
legislative assessment of reasonableness and necessity is not
appropriate because the State's self-interest is at stake." *U.S.
Trust Co. v. New Jersey*, 431 U.S. 1, 26 (1977).

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 22

    **1.   Count One: Lump-Sum Compensation for Unused Sick Leave**

In Count I, Kendall alleges that he entered into a contract with the Superior Court in 1983 that entitles him to receive lump-sum compensation for all unused sick leave he accumulated over the course of his employment. Kendall alleges that his contract was impaired by the passage of Act 5135, which eliminated the option for employees to receive such lump-sum compensation.

Here, the record reflects that in 1983, Kendall entered into an employment contract with the Government. The Appointment Letters Kendall signed do not directly address the issue of compensation for sick leave. However, in 1983, all government employees were entitled, upon termination of their employment, to compensation for "[a]ll sick leave in excess of 90 days" in a single lump sum calculated based on the employee's rate of pay. V.I. CODE ANN. tit. 3, § 731(a) (1981).

In 1986, the passage of Act 5135 eliminated this lump-sum compensation option. Instead, employees would receive compensation for unused sick leave only as a credit to their retirement annuity. V.I. CODE ANN. tit. 3, § 731(a) (1986).

This Court has once before addressed whether modifications of retirement benefits run afoul of the Contract Clause. In *Joseph v. Government of the Virgin Islands*, 576 F. Supp. 1335 (D.V.I. 1983), several judges of the then-Territorial Court of

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 23

the Virgin Islands sued when the "Judges Pension Fund" was

eliminated. *Id.* at 1338. The Judges Pension Fund was created on

December 30, 1976, by the passage of Act Number 3924 ("Act

3924"). *Id.* To participate in the Judges Pension Fund, judges

were required to make regular contributions to the Fund equal to

eight percent of their annual salary, greater than the six-

percent rate required of other Virgin Islands Government

employees. *Id.*

The plaintiff-judges in *Joseph* were all appointed prior to

or during the effective period of the Judges Pension fund.

However, before any judge could make such a contribution, on

January 28, 1977, Act 3924 was repealed and the Judges Pension

Fund abolished. *Id.* None of the plaintiff-judges retired during

the time in which the Judges Pension Fund was active.

This Court first held that, under Title 4, Section 72 of

the Virgin Islands Code ("Section 72"), a judge's "compensation"

could not be reduced during the judge's term in office.[5] *Id.* at

1339. The Court read Section 72 as protecting all forms of

compensation, including pension rights. *Id.*

The Court went on to conclude that denying judges pensions

at the rate set out in Act 3924 violated the Contracts Clause.

Specifically, the Court held that the pension rights of the

---

[5] Title 4, Section 72 of the Virgin Islands Code provides, in pertinent part: "No judge's compensation shall be reduced during his term of office without his consent." V.I. CODE ANN. tit. 4, § 72.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 24

judges, "may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity." *Id.* at 1340 (citing *Kern v. City of Long Beach*, 179 P.2d 799 (S. Ct. Cal. 1947)).

Kendall urges the Court to apply its holding in *Joseph* to the present case. The Court declines to do so.

It is, of course, well-settled that a district court opinion, even when published, has no precedential value, and is entitled only to such weight as the quality of its reasoning and analysis warrants. *See, e.g.*, *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1534 n.7 (3d Cir. 1997) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 411 (3d Cir. 1988)); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1511 n.12 (3d Cir. 1994) (citing *Galgay v. Gil-Pre Corp.*, 864 F.2d 1018, 1021 & n.5 (3d Cir. 1988)). The Court is not persuaded that the reasoning and analysis of *Joseph* merits its application to the present case.

To begin, *Joseph* omits any discussion of the lynchpin of Contracts Clause analysis when dealing with statutorily created rights: the "unmistakability doctrine." "In general, a statute is itself treated as a contract when the language and the circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the States." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 (1977). "The threshold requirement for the recognition of public

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 25

contracts has been referred to as the 'unmistakability doctrine.' " *Parker v. Wakelin*, 123 F.3d 1, 6 (1st Cir. 1997) (citing *United States v. Winstar*, 518 U.S. 839, 874 (1996) ("[N]either the right of taxation, nor any other power of sovereignty, will be held . . . to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken." (quoting *Jefferson Branch Bank v. Skelly*, 1 Black 436, 446 (1862)) (internal quotation marks omitted)).

The unmistakability doctrine is a canon of construction derived from the principle that "legislatures should not bind future legislatures from employing their sovereign powers in the absence of the clearest intent to create vested rights protected under the Contract Clause . . . ." *Parker*, 123 F.3d at 6. The requirement that "the government's obligation unmistakably appears thus serve[s] the dual purposes of limiting contractual incursions on a State's sovereign powers and of avoiding difficult constitutional questions about the extent of State authority to limit the subsequent exercise of legislative power." *Winstar*, 518 U.S. at 875. Thus, in the instant case, the Court must determine whether Section 731(a) evinces a clear intent on the part of the Virgin Islands legislature to create contractual rights against the modification of pension benefits.

In *Pennie v. Reis*, 132 U.S. 464 (1889), the United States Supreme Court held that public employee pension programs do not

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 26

create vested rights against legislative modifications. The
Supreme Court characterized pension-benefit programs as mere
"gratuities." The Supreme Court concluded that such programs may
be freely revoked by a state without running afoul of the
Contracts Clause. *See id.* at 470-71 (holding that California's
adjustment of a pension benefit plan for police officers did not
constitute deprivation of property without due process).

Although this "gratuity" approach has been rejected by the
majority of jurisdictions, *Pennie* has never been explicitly
overruled. *See generally* 60A Am. Jur. 2d, Pensions and Retirement
Funds, §§ 1620-29 (discussing the shift away from *Pennie* and the
gratuity approach and toward treatment of pension plans as
contracts). "The modern trend . . . has . . . been to protect
pension rights on the theory that a state's promise of pension
benefits represents an offer that can be accepted by the
employee's performance." *Transp. Workers Union*, 145 F.3d at 623.

Modern courts differ, however, on the point at which rights
under a public pension program become protected from revocation
or alteration. *See, e.g.*, *Parker*, 123 F.3d at 7 (Finding "no
unmistakable intent by the Maine Legislature to create an
enforceable private contract right against the modification of
the plaintiffs' retirement benefits until they are actually
receivable"); *Kestler v. Board of Trustees of N.C. Local
Governmental Emps. Ret. Sys.*, 48 F.3d 800, 804 (4th Cir. 1995)

Case: 3:10-cv-00109-CVG-RM   Document #: 236   Filed: 03/01/13   Page 27 of 52
Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 27

(no contract rights prior to retirement); *Petras v. State Bd. of Pension Trustees*, 464 A.2d 894, 896 (Del. 1983) (rights not subject to change after conditions for vesting under terms of plan satisfied); *State of Nevada Emps. Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1227 (9th Cir. 1990) (all employees have contract rights "subject to reasonable modification"); *Miller*, 557 P.2d at 974 (all employees have some pension rights, subject to reasonable modifications, upon performance of substantial services for employer; but right to immediate payment of full pension does not mature until pension has vested); *Oregon State Police Officers' Ass'n v. State*, 918 P.2d 765, 773 (S. Ct. Or. 1996) (contract formed "on acceptance of employment or after a probationary period"); *Booth v. Sims*, 456 S.E.2d 167, 184 (1995) (contract formed after employees have substantially relied to their detriment).

In *Parker v. Wakelin*, 123 F.3d 1 (1st Cir. 1997), the United States Court of Appeals for the First Circuit considered the application of the unmistakability doctrine to a state pension plan. In that case, Maine state law since 1942 provided that public-sector employees would receive pensions upon either reaching the statutory retirement age or having twenty-five years of credited service. In 1993, Maine enacted a series of changes to its pension plan. Specifically, Maine increased the rate of member contributions; capped the maximum salary that

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 28

could be considered in calculating a retirement annuity, much
like the GERS's interpretation of Section 706; and extended the
period between cost-of-living adjustments to retirement benefits
by six-month. The plaintiffs, a class of Maine public-school
teachers in service before the statutory changes but not yet
retired, sued, claiming the amendments violated the Contract
Clause. *Id.* at 3.

At the outset, the First Circuit noted that in 1975, the
Maine legislature adopted a statute which provided that "[n]o
amendment to [the Maine public-sector pension plan] shall cause
any reduction in the amount of benefits which would be due to
the member based on creditable service, compensation, employee
contributions and the provisions of this chapter . . . ." *Id.* at
3–4 (quoting 5 M.R.S.A. § 17801 ("Section 17801") (1989)). The
First Circuit found it unclear from this statute when,
precisely, benefits were due to an employee:

> The . . . teachers argue that benefits are
> "due" from the moment of employment . . . .
> The State contends that section 17801 is a
> reservation of the power to alter benefits
> until the retirement benefits are literally
> due to be received. The third
> alternative . . . is that benefits are "due"
> if a teacher has completed the statute's
> initial service requirements, although
> pension benefits are not yet currently
> payable.

*Id.* at 8.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 29

The First Circuit went on to note that a recent decision of the Maine Supreme Judicial Court had clearly ruled out the teachers' suggested interpretation. However, it remained undecided whether "due" referred simply to the completion of service requirements, or if it meant that the benefits must be actually payable. Although the relevant state decisional law suggested the latter construction, the Court held the statute was not sufficiently clear to proceed any further. The amendments did not take away any retiree benefits actually due to be received, and the statute did not clearly confer a contractual right to benefits prior to retirement. Accordingly, under the unmistakability doctrine, the Contract Clause had not been violated.

The modern approach to analyzing Contracts Clause claims arising from statutorily created benefits thus appears to be at odds with this Court's decision in *Joseph*. It is true, as *Joseph* noted, that many state courts have treated any statutory promise to pay as binding against the state; in some cases immediately binding upon employment. Yet, the question a federal court must answer is slightly different. This Court must inquire not simply whether a contractual obligation was formed, but rather whether the state unmistakably expressed an intention to bind itself in

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 30

perpetuity. To the extent that *Joseph* holds otherwise, its

underpinnings are no longer legally supportable.[6]

The Court's inquiry must thus begin with the Virgin Islands

Code. Section 731(a), prior to its amendment, provided that a

lump sum payment "shall" be paid to an employee "whether his

separation from the service was mandatory, voluntary or

involuntary." V.I. CODE ANN. tit. 3, § 731(a) (1981).

It is not entirely clear whether the use of the word

"shall," while a common signifier of obligation, evinces an

unmistakable intent of the Legislature to be bound from altering

the statutory promise. Significantly, the Court of Appeals for

the First Circuit in *Parker* contemplated similar language in the

Maine Pension Statute: "No amendment . . . *shall* cause any

reduction in the amount of benefits which would be due . . . ."

123 F.3d at 3-4 (emphasis supplied). The First Circuit

---

[6] Significantly, none of the plaintiff-judges in *Joseph* retired during the effective period of the act creating the Judges Pension Fund. Thus, there was no judge who was due and eligible to receive a pension from the Judges Pension Fund during its brief existence. The repeal of the Judges Pension Fund did not destroy any present right or expectation, only future rights. These future rights were also only potential rights, as most of the judges in *Joseph* had not yet retired, and the Court made no finding that, if they did in fact retire, they would be eligible for a pension. Nonetheless, the Court in *Joseph* went on to hold that these potential, future rights were protected for all time against any diminution, and ordered the Legislature to reinstate the Judges Pension Fund.

*Joseph*'s holding that the Contract Clause precluded any diminution whatsoever is further suspect because it relied on a statutorily conferred right, which, as discussed above, must pass "unmistakability doctrine" muster. Had the judges been litigating a right derived from the Constitution or the Organic Act, the inquiry would properly have been simply whether or not that right existed. The Contract Clause demands more, however: the right must not merely exist, but have been unmistakably created by the legislature.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 31

ultimately found that this language, while implying some obligation on behalf of the state, did not rise to the level of being unmistakably clear.

In *Parker*, the First Circuit also focused on whether the use of the word "due" meant the State was irrevocably bound to honor retirement benefit promises upon the initiation of employment, upon retirement, or at some point in between. Here, Section 731 is somewhat clearer. Section 731 does not suggest that a right to compensation for sick leave accrues at any point prior to an employee's "separation from the service." Although employees have an ongoing right to take sick leave throughout their employment, V.I. CODE ANN. tit. 3, § 583, Section 731 provides no corresponding right for employees to receive compensation for unused sick leave throughout their employment.

Thus, as in *Parker*, the Court is confronted with at least two plausible readings of the statute. Section 731 might confer a right to compensation upon an employee as soon as she or he accumulates more than the minimum ninety days of unused sick leave. Alternatively, this right may accrue only upon such time as the employee separates from the service.

The latter reading seems more consistent with the text of the statute, especially considering it provides no means by which an employee might be compensated for unused sick leave prior to their departure from Government employment. However,

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 32

the Court need not definitively construe Section 731. It is

sufficient to say that it is not unmistakably clear that Section

731 evinces an intent by the Virgin Islands Legislature to

confer an immediate, vested right in employees to compensation

for unused sick leave. Rather, the statutory framework indicates

that the lump-sum benefit created by Section 731, at best,

became "an enforceable private contract right against . . .

modification," *Parker*, 123 F.3d at 9, only if the benefit was

receivable prior to the modification.[7] Here, it was not.

Indeed, as the statutorily created lump-sum benefit existed

during a limited time frame, at the conclusion of which the

Legislature amended it, Kendall could not avail himself of the

benefit as it expired prior to his separation. There is no clear

and unmistakable indicia in the pre-amendment version of Section

731 that the benefit was intended to be permanently impervious

to modification. The Court thus finds that Section 731 did not

give rise to a clear intent to enjoin future Legislatures from

"employing their sovereign powers," *Parker*, 123 F.3d at 6, to

subsequently amend the statute.

---

[7] The First Circuit in *Parker* noted that the Maine Pension Statute may
have unmistakably created a legitimate expectation that retirement benefits
are receivable. 123 F.3d at 9. In other words, Maine could not alter
retirement benefits when they "are literally due to be received." *Id.* at 8.
Here, under the terms of Section 731, an employee was only due to receive
compensation for unused sick leave upon her or his "separation from the
service . . . ." V.I. CODE ANN. CODE ANN. tit. 3, § 731(a) (1981).

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 33

Even if the language of Section 731 provided a basis to limit the subsequent exercise of the Legislature's "sovereign powers," *id.*, the Court is unconvinced that Act 5135 works a substantial impairment. In assessing whether an impairment is substantial, the Court looks at "the extent to which reasonable expectations under the contract have been disrupted." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).

In general, "the promise to pay a sum certain constitutes not only the primary inducement for employees to enter into a labor contract, but also the central provision upon which it can be said they reasonably rely." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006) (finding wage freeze a substantial impairment). Courts have accordingly treated virtually all diminutions in employees' compensation--even purely temporary ones--as substantial impairments. *See Assoc. of Surrogates & Supreme Ct. Reporters v. New York*, 940 F.2d 766, 772 (holding that "lag payroll," under which employee's compensation would be delayed, though not outrightly diminished, was a substantial impairment).

However, a reduction in compensation may not amount to a substantial impairment if "any disadvantage to employees [is] accompanied by comparable new advantages." *Nev. Emps. Ass'n v. Keating*, 903 F.2d 1223, 1227 (9th Cir. 1990) (internal citation

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 34

and quotation marks omitted). In *Nevada Employees Association, Inc. v. Keating*, 903 F.2d 1223 (9th Cir. 1990), the Nevada state employee's pension plan initially permitted joint contributions by the employers and employees. Employees could also withdraw their contributions at any time without penalty. In 1975, the Nevada Legislature amended the pension plan. Under the new plan, the employers would pay the entire contribution. However, employees were no longer permitted to withdraw their contributions without penalty.

Nevada argued that this arrangement was constitutionally permissible because "with mandatory employer-paid contributions, public employees take home more money and retired employees receive a higher pension benefit." *Id.* at 1227. The Court of Appeals for the Ninth Circuit found this argument unpersuasive. It noted that Nevada was assuming "that all public employees will work long enough to have their pension rights vest." *Id.* In fact, "the rights of 93% of public employees will not vest." The Court also noted that the new pension plan permitted employers to reduce employee compensation, albeit to a limited extent, in order to offset the costs of employer-paid contributions. The Court ultimately concluded that the only somewhat higher take-home pay alone would not offset the loss of the right to a refund of employee-paid contributions.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 35

Here, unlike in *Nevada Employees Association* nothing on the face of Section 731 or in the record currently before the Court indicates that Act 5135 works a net diminution in employee compensation. While it is conceivable that some employees might be denied any compensation for their unused sick leave if they separate from the service before they are eligible to retire, such claims are not presently before the Court. There is also no evidence that the majority of Virgin Islands public-sector employees will leave their positions before becoming eligible to retire. The Court thus cannot say that the statute on its face violates the Contracts Clause.

Even so, Act 5135 may have worked a substantial impairment of Kendall's contract in particular. Kendall claims that at the time he retired in 2009, he had accumulated 2,237.5 hours of unused sick leave; that he was earning an hourly rate of $73.08; and that he is therefore entitled to a lump-sum payment of $110,898.90. This figure is problematic for several reasons. To begin, it does not disaggregate sick leave he accumulated before and after becoming a judge. Kendall retired from his position at the General Counsel's office before taking his seat on the Superior Court. This is without question a "separation" from service, as evinced by his concomitant request to receive his retirement annuity in 2004. Thus, he cannot include his time on the bench as part of that period of Government employment in

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 36

which he legitimately expected lump-sum compensation for unused
sick leave. The lump-sum payment Kendall seeks also does not
account for the fact that he received a significantly lower
salary in the General Counsel's office than he did as a judge.

Further, there is no evidence comparing what Kendall is
entitled to receive under Section 731, as amended, with what he
claims he should have received under Section 731, pre-amendment.
It is conceivable that Kendall might receive more under the
modern version of the statute than under its predecessor. Act
5135 eliminated the rule that only unused sick leave in excess
of ninety days was compensable, instead requiring credit be
given to any unused sick leave in excess of 5 days. V.I. CODE ANN.
tit. 3, § 731(a). It also requires the Government to round up:
"The credit . . . shall be 1 month for any period of 11 to 20
days . . . and 1/2 month for any period of 5 to 10 days." *Id.*
Moreover, Kendall will reap the rewards of this additional
service credit for the entire duration of his retirement.
Kendall has simply failed to adduce any evidence that might show
his legitimate expectations were substantially impaired by Act
5135. Accordingly, the Court finds that Count One must be
dismissed.

### 2.   Count Two: Annuity in Excess of $65,000

Kendall alleges that he entered into a contract in 1983
that entitles him to an annuity for his service in the General

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 37

Counsel's office based on his most recent rate of pay. Kendall
alleges that this contract was impaired by Act 5763, which
amended Section 706 to limit the average salary to a maximum of
$65,000 for the purposes of calculating a retirement annuity.
Kendall also asserts that Act 5222, which provides for a .325%
reduction in annuities for every year a retiree is under the age
of sixty, impairs his contract.[8]

Here, the evidence shows that in 1983, Kendall entered into
a contract for employment with the Government. At that time,
Section 706 provided that "a member [of the GERS] shall receive
a service retirement annuity, payable semi-monthly, computed at
the rate of 2.5% average compensation times the number of years
credited service, not to exceed 40 years." V.I. CODE ANN. tit. 3,
§ 706(a) (1981). Thus, under this statutory regime, while an
annuity could not exceed one hundred percent of the employee's
average salary, there was no upper limit to what that average
salary could be.

By the time Kendall retired from the General Counsel's
office, the Legislature had imposed an upper limit on annuities,

---

[8] Pensions for Virgin Islands Judges are determined by a separate
statutory provision, which was not altered by Act 5222 or 5763. *See* V.I. CODE
ANN. tit. 3, § 733. Retired judges are entitled to receive separate annuities
based on other government service. *See id.* at § 733(g) ("Nothing contained in
this chapter shall be construed to prevent any person eligible therefore from
simultaneously receiving an annuity computed on the basis of years of service
other than as a member of the Judiciary and an annuity computed in accordance
with this section . . . ."). The Court thus construes Count Two as asserting
that Kendall's legitimate expectations as Assistant General Counsel and
General Counsel were impaired by Acts 5222 and 5763.

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 38

such that no retiree could "receive a . . . retirement annuity . . . that exceeds $65,000 . . . ." V.I. CODE ANN. tit. 3, § 706(d) (1991). The Legislature had also defined "compensation" as "salary . . . provided that the maximum amount of compensation to be used . . . in the computation of any annuity . . . shall be $65,000." V.I. CODE ANN. tit. 3, § 702(n) (1991).

Kendall again urges this Court to apply its holding in *Joseph* to the present case, and find that his right to an annuity vested immediately upon the commencement of his service. For the reasons discussed above with respect to Kendall's sick leave, the Court similarly is not persuaded that *Joseph* provides any support for Kendall's annuity claim. Accordingly, the Court will proceed to consider the unmistakability doctrine in accordance with the principles outlined above.

To begin, the Court must look to the relevant portions of the Virgin Islands Code. Here, the Virgin Islands Code provides that: "The right of any [GERS] member or other beneficiary to any annuity, benefit or refund shall accrue as of the date of establishment. . . . No annuity or benefit shall be increased, decreased, revoked, or repealed, except for error, or where specifically otherwise provided by this chapter." V.I. CODE ANN. tit. 3, § 723 ("Section 723").

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 39

The first sentence of Section 723 does not seem to apply here. Instead, it appears the Legislature intended simply to ensure the rights of those employed by the Government prior to the creation of GERS would be protected. It would be absurd to read this provision as applying to someone in Kendall's position, as it would seem to suggest that Kendall had a right to an annuity or benefit in 1959, when GERS was created, some fourteen years before he began working for the Superior Court.

The last sentence of Section 723, however, does merit more serious attention. Specifically, the meaning of the phrase "[n]o annuity or benefit" is not entirely clear. It may mean that the Government has pledged, from the date an employee begins her or his service, never to change or alter any benefit promised that employee. This reading would, in effect, treat every retirement benefit provided for in the Virgin Islands Code as an offer for a unilateral contract, which becomes binding upon the Government as soon as an employee is hired.

Much like the statute at issue in *Parker*, Section 723 does not demand such a reading, however. "No annuity or benefit" might simply mean that no annuity or benefit "literally due to be received," *Parker*, 123 F.3d at 6, can be altered by the Government. This reading is perhaps the more sensible one, as an annuity or retirement benefit cannot be "increased, decreased, revoked or repealed," in the conventional sense of those terms,

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 40

prior to its existence. If the Legislature intended to protect
future as well as present rights to annuities or benefits, it
would have been simple to specify as much.

This reading is reinforced by the fact that, in the Virgin
Islands, all members of the GERS "by virtue of the payment of
contributions to this system, receive a vested interest in such
contributions, and in consideration of such interest shall be
conclusively deemed to undertake and agree to pay the same and
to have them deducted from [their] compensation . . . ." V.I.
CODE ANN. tit. 3, § 722 ("Section 722"). Contributions must be
made regularly, over the entire course of an employee's service
with the Virgin Islands Government. If, however, an employee
does not pay contributions on time, they may be made
retroactively. *See* V.I. CODE ANN. tit. 3, § 704(j). Retroactive
contributions must be equal to the income the employee would
have contributed, plus interest. *Id*.

Moreover, an employee is not eligible to receive a full
pension until they have rendered either thirty years of credited
service or, if the employee is older than sixty, after ten years
of credited service. V.I. CODE ANN. tit. 3, § 705. Credited
service is defined as service for which an employee has paid all
the relevant contributions, either at the time they were owed or
retroactively. *See* V.I. CODE ANN. tit. 3, § 704. If an employee
retires prior to becoming eligible for an annuity, she or he

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 41

"shall be entitled to receive a refund of the accumulated contributions . . . ." V.I. CODE ANN. tit. 3, § 713(a) ("Section 713"). An employee who receives such a refund and then rejoins the ranks of the Government "shall be considered a new member upon subsequent reemployment . . . ." *Id.* at § 713(b).

From this statutory framework, it is unmistakable that the Government is obliged to pay a retirement annuity to an employee who retires with the requisite years of credited service, given her age. What is less clear is whether an employee has a contractual right to an annuity immediately upon commencement of service, or only upon satisfaction of the statutory conditions.

Under Section 722, an employee immediately acquires a vested right in her contributions the moment the employee begins making them. Section 722 uses the term "vested right" and specifies that this right is created simply "by virtue of the payment of contributions" into the retirement system. This unmistakably evinces a legislative intent to protect the contributions made to secure retirement benefits, as soon as an employee begins making contributions. Reading Section 722 in conjunction with Section 713, however, suggests that the Virgin Islands Legislature did not intend for government employees to have vested rights in their future pensions. Instead, they have a right in the contributions they make to the GERS, as well as a right to a refund of those contributions.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 42

It is unmistakable from this statutory regime that the Legislature intended to bind itself to its promise to provide employees with refunds of their contributions, should they elect to receive them. The Legislature is also bound not to alter annuities or retirement benefits once they are due to be received. That is, if the benefit exists at the time the employee retires. What is absent, however, is an unmistakable legislative intent to preclude any alteration of an employee's annuity prior to such time as the annuity is receivable.[9] The Legislature could have simply stated that employees receive a vested right in their annuities by virtue of their payment of contributions. It chose not to employ such language. Indeed, there is nothing in the statute that would even suggest that employees have a "contractual right against . . . modification," *Parker*, 123 F.3d at 9. Instead, the Legislature carefully cabined employees' rights to the contributions themselves, and nothing more.

The Legislature thus did not confer on employees an unalterable right to a pension calculated under the laws in effect at the time of the commencement of their employment. Instead, it reserved its right to "employ[] [its] sovereign

---

[9] As noted above, retirement benefits are receivable once they "are literally due to be received." *Parker*, 123 F.3d at 8.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 43

powers," *Parker*, 123 F.3d at 6, to subsequently amend the statute.

The operative inquiry is thus whether Kendall's annuity was due at the time Acts 5222 and 5763 were passed or, at a minimum, whether he would have been eligible to receive an annuity at that time. Absent that, the Legislature was not precluded from altering the amount of Kendall's future annuity.

Kendall began his government service in 1983. Act 5222 was passed in 1990; Act 5763 in 1991. These Acts were passed only six and seven years after Kendall began his government service, respectively. There is therefore no way in which Kendall could have been eligible for a pension at the time of the alleged impairment. At best, Kendall was entitled to receive a refund of his contributions. There is nothing in the record to suggest that Kendall was ever denied an opportunity to receive such a refund, or that his right to a refund was ever impaired in any way. Accordingly, Count Two will be dismissed.

### 3.   Count Three: Lump-Sum Compensation for Annual Leave

Kendall alleges that in 1983 he entered into a contract with the defendants that entitled him to lump-sum compensation for any and all unused annual leave he had accrued at the time of his retirement.

Here, Kendall relies primarily on a document prepared by the Virgin Islands Department of Finance which states that, as

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 44

of April 25, 2009, he had an "Annual Leave Balance" of 644 hours and "Excess Annual Leave" of 584 hours. (Pl.'s Ex. 29.) He claims he has not received compensation for his excess annual leave.

Upon retirement, employees of the Government who are "entitled to leave under sections 581-584 of this title . . . shall be paid compensation in a lump sum for all accumulated and current accrued annual or vacation leave to which [they] are entitled under existing law." V.I. CODE ANN. tit. 3, § 587 ("Section 587"). Section 587 was in place when Kendall began his government service and was not altered in any significant way during the course of his employment.

It is essential to prevail on a Contracts Clause claim that a plaintiff show that "a change in *law* has impaired [a] contractual relationship." *Transp. Workers Union*, 145 F.3d at 621. Here, there has been no change in the law governing compensation for unused annual leave. Without some change to a statute or regulation, there can be no constitutionally recognized impairment of a contract. Although a state may, through its conduct, cause a contract to be impaired, if such conduct does not stem from legislation it is not a violation of the Contracts Clause. *See id.* Accordingly, inasmuch as Count Three asserts a claim for violation of the Contracts Clause, it is properly dismissed.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 45

Of course, constitutionally permissible state conduct that impairs a contract may still give rise to a cause of action for breach of contract. Kendall thus alternatively seeks to proceed in this vein. There are four essential elements of a breach of contract claim: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages. *See Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997); *see also* RESTATEMENT (SECOND) OF CONTRACTS §§ 235, 237, 240 (1965) (defining breach of contract).[10]

Here, Kendall argues that Section 587 created a duty on behalf of the Government to pay him for all his unused leave at the time of retirement, "excess" or otherwise.

This claim is beset by a significant threshold difficulty, however. Section 587 only authorizes lump-sum compensation for unused leave when an employee is "entitled to leave under Sections 581-584 of this title . . . ." V.I. CODE ANN. tit. 3, § 587(a). Under Title 3, Section 581 of the Virgin Islands Code ("Section 581"), employees "shall be entitled to 26 days annual leave . . . . The part unused in any year shall be accumulated for succeeding years until it totals not exceeding [*sic*] 60 days." V.I. CODE ANN. tit. 3, § 581(a).

---

[10] In the Virgin Islands, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." V.I. CODE ANN., tit. 1, § 4.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 46

At the most then, upon his retirement Kendall could have legally accumulated only sixty days of annual leave from preceding years, and twenty-six days of annual leave from the year of his retirement. Eight-six eight-hour days, or 688 hours, thus represents the maximum amount of leave Kendall could have been entitled to under Section 587.

Here, the evidence adduced at trial shows that at the time of his retirement, Kendall was legally entitled to 640 hours of accumulated leave. Precisely how this sum was arrived at is not entirely clear on the record currently before the Court. However, Kendall has not adduced any other evidence that would show he was entitled to an additional 48 hours of leave under Section 587. Although he highlights the fact that he was shown to have accumulated 584 hours of "excess annual leave," he offers nothing to prove that any portion of this was leave he could have claimed while still employed under Section 581. Specifically, he offers nothing to show that this sum does not reflect the total of all his unused leave from years past, up to sixty days; plus whatever leave he had not used during the year of his retirement. Accordingly, Count Three will be dismissed.

### 4.   Count Four: Unused Compensatory Time

As noted above, Count Four was orally dismissed at a summary judgment hearing conducted before the trial. This memorializes that oral ruling.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 47

In the Amended Complaint, Kendall alleged that the failure
of the defendants to pay him for his unused compensatory time
was a violation of the Contracts Clause. As discussed above, it
is essential for a plaintiff to prevail on a Contract Clause
claim that "a change in *law* has impaired [a] contractual
relationship." *Transp. Workers Union*, 145 F.3d at 621. At the
November 8, 2012, hearing, the Court inquired what, if any, law
regarding the payment of compensatory time changed over the
course of Kendall's tenure with the Superior Court. Kendall was
unable to identify any such law. Without a change in law or
regulation, state action impairing a contract is not
constitutionally impermissible. The Contracts Clause forbids
states only from "enter[ing] into any . . . Law impairing the
Obligation of Contracts." U.S. Const. art. I, § 10. Accordingly,
inasmuch as Count Four asserts a violation of the Contracts
Clause, it is properly dismissed.

As noted above, constitutionally permissible state action
may still amount to a breach of contract. Kendall again seeks to
proceed in this vein. As enumerated above, there are four
essential elements of a breach of contract claim: (1) an
agreement, (2) a duty created by that agreement, (3) a breach of
that duty, and (4) damages. *See Stallworth Timber Co. v. Triad
Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997); *see*

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 48

*also* RESTATEMENT (SECOND) OF CONTRACTS §§ 235, 237, 240 (1965)

(defining breach of contract).

It is well settled that where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial," and summary judgment is appropriate. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The defendants contended that there was no evidence of any statutory or other promise made to Kendall to pay him for unused compensatory time, to grant him compensatory time in the first place, or indeed even to pay him for overtime.

In response, Kendall relied on two things. First, he argued that he was entitled to compensation for overtime because such compensation is statutorily required for employees of the Executive Branch and the Legislative Branch of the Government. *See* V.I. CODE ANN. tit. 2, § 43; V.I. CODE ANN. tit. 3, § 560. This argument fails because, as Kendall ultimately admitted, there is no similar statute for the employees of the Virgin Islands Judiciary. Indeed, judicial employees are expressly exempted from the provisions providing for overtime pay. V.I. CODE ANN. tit. 3, § 451a(b)(3).

Alternatively, Kendall relied on a Personnel Manual promulgated by the then-Territorial Court at or around the time he began his employment. This manual provided that:

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 49

> [O]vertime compensation is made at the rate
> of time-and-a-half for service exceeding 8
> hours per day and 40 hours per week, and at
> the rate of double time for service on
> holidays.
>
> .     .      .      .     All      overtime
> work . . . must . . . be authorized by the
> supervisor of the employee . . . .

(Pl.'s Mot. for Summ. J., Ex. 2.)

This evidence is deficient for several reasons. First, the Personnel Manual lacks the force of law. That is, it is not a statutorily created benefit for employees that may be construed as a contractual right. Second, it carries none of the earmarks of a private contract. There is no evidence of mutual assent. *See, e.g.*, *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (concluding that a litigant's signature manifested his assent to an agreement). There is no evidence that this purported agreement was supported by consideration on both sides. *See, e.g.*, *Adris Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (noting the parties' "valid agreement supported by consideration"); *see also Channel Home Ctrs. V. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986) (noting that consideration is a required element of contract formation). There is no evidence the personnel manual was signed by Kendall and the Government or otherwise made the basis of some bargain. At best, the personnel manual's language is only a unilateral promise unsupported by any apparent consideration.

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 50

Moreover, the manual clearly is not intended to apply to someone in Kendall's position. Certainly Kendall could not have been said to have had a "supervisor" while he was a judge. Indeed, as noted above, a judge is not merely an employee of the Court--he is the Court. It is likewise far from clear that Kendall was supervised in the conventional sense of the term during his tenure as General Counsel.

Further, Kendall has adduced no proof that the overtime he claims to have worked was ever approved by any "supervisor" of his, whomever that might have been. Even if the personnel manual were more than a gratuitous promise, payment for overtime is clearly conditioned on the approval of that overtime work by a supervisor. Accordingly, as Kendall failed to show a genuine dispute of material fact as to Count Four, it was properly dismissed.

## III. CONCLUSION

After a long career of service to the judiciary, Kendall seeks post-employment compensation for various kinds of unused leave and for alleged unconstitutional diminution in his retirement annuity. Kendall essentially seeks relief because a benefit that existed when he commenced employment was modified prior to him achieving a status--separation--through which he could receive the benefit. The constitutional theory on which he

*Kendall v. Gov't of the V.I.*
Civil No. 2010-109
Memorandum Opinion
Page 51

proceeds, however, provides him no relief for the injury of which he complains.

Kendall asserts that a law that confers a benefit on a government employee ties the hands of subsequent legislatures from altering the benefit before an employee separates from service. There is no such injunction that bars a subsequent legislature from revisiting its prior enactments, absent an unmistakable intent of the lawmakers to do so. No such intent has been adduced by Kendall.

In reaching this conclusion, the Court is not unmindful of the service and sacrifice of public servants and the law's desire to appropriately compensate such servants. At the same time, the Court is mindful of the sovereign power of the Legislature to reassess the amount and kind of benefits it chooses to extend to public servants, as well as the manner in which those benefits are distributed.

While there may be a desire that a statutorily created benefit continue in perpetuity, that desire must give way to the Constitution's weight. Significantly, the Constitution does not provide a safe haven for such perpetual benefits absent some clear and unmistakable indicia that such a result was intended. Indeed, to do so, the Constitution would sanction the notion that an earlier legislature could bind, and arguably cripple, a

Kendall v. Gov't of the V.I.
Civil No. 2010-109
Memorandum Opinion
Page 52

future legislature. Neither the law nor the facts of this case

support such an untenable result.

Within the confines of the Contracts Clause, legislatures

are given great leeway to alter or amend the promises they make.

It is inevitable that such alterations or amendments may seem

unfair, and Kendall argues extensively that a substantial

unfairness is worked in this case. Unfairness alone, however,

cannot elevate his claims to constitutional dimensions.

Accordingly, and for the reasons outlined throughout this

Opinion, the Court finds that all counts of Kendall's Amended

Complaint ought to be dismissed. An appropriate judgment

follows.

S_____
    **Curtis V. Gómez**
    **Chief Judge**